NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DELAWARE RIVERKEEPER NETWORK, the DELAWARE RIVERKEEPER, and DAMASCUS CITIZENS FOR SUSTAINABILITY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> Carol COLLIER, in her official capacity as Executive Director of the Delaware River Basin Commission, and DELAWARE RIVER BASIN COMMISSION, <br><br> Defendants. | Civil No. 11-0423 (AET) <br><br> **OPINION** |

THOMPSON, U.S.D.J.

I. INTRODUCTION

This matter has come before the Court upon the Motion to Join and/or Dismiss [docket # 8] filed by Defendants Carol Collier and Delaware River Basin Commission ("DRBC"). Plaintiffs Delaware Riverkeeper Network ("DRN"), the Delaware Riverkeeper, and Damascus Citizens for Sustainability, Inc. ("DCS") oppose the motion [14]. The Court has decided the motion upon the submissions of both parties and without oral argument, pursuant to Fed. R. Civ. P. 78(b). For the reasons stated below, Defendants' motion to join necessary parties is granted and Defendants' motion to dismiss Collier as a defendant is granted.

## II. BACKGROUND[1]

This case involves Plaintiffs'[2] appeal of the Delaware River Basin Commission's ("DRBC" or "Commission") decision to exempt from regulation certain wells used for natural gas exploration.

### A. The Delaware River Basin Commission ("DRBC")

The DRBC is a federal-interstate compact agency that was created pursuant to the 1961 Delaware River Basin Compact ("Compact"), *see* Pub. L. 87-328, 75 Stat. 588 (1961); *see also* Compact, *available at* http://www.state.nj.us/drbc/regs/compa.pdf.  The Compact was enacted by concurrent legislation in the United States Congress and in individual states including New York, New Jersey, Pennsylvania, and Delaware, in order to coordinate the management of water resources among private enterprise and federal, state, and local governments.  The DRBC's five Commissioners are, *ex officio*, the governors of the four member states and the commander of the North Atlantic Division of the U.S. Army Corps of Engineers on behalf of the federal government.  These Commissioners collectively serve as the governing body of the Commission, delegate administrative functions and duties, and appoint principal officers including the Executive Director.  (Compact §§ 14.1(b), 14.5(a).)

---

[1] The facts in this section are taken from the Complaint as well as matters of public record such as the Delaware River Basin Compact and the Rules of Practice and Procedure, both of which also happen to form the basis of Plaintiffs' claims.  *See Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (stating that courts deciding Rule 12(b)(6) motions to dismiss may consider "allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

[2] Plaintiff DRN is a non-profit organization dedicated to protecting and restoring the Delaware River through environmental advocacy and law enforcement efforts.  (Compl. ¶ 2.)  Plaintiff the Delaware Riverkeeper, Maya van Rossum, is a privately funded ombudsman who advocates on behalf of the DRN.  (*Id.* at ¶ 3.)  Plaintiff DCS is a non-profit organization committed to protecting the Delaware River Basin from risks associated with natural gas exploration, production, processing, and transportation.  (*Id.* at ¶ 8.)

### B. The Commission's Rules of Practice and Procedure ("RPP")

The DRBC implements the Compact's directives through the Administrative Manual: Rules of Practice and Procedure ("RPP"), *see* 18 C.F.R. §§ 401.81–90; *see also* RPP, *available at* http://www.state.nj.us/drbc/regs/rules.pdf.  Substantively, the Compact prohibits any project having a "substantial effect" on the Delaware River Basin's water resources unless the Commission grants prior approval.  (Compact § 3.8.)  Under the RPP, certain classes of projects are deemed not to have a "substantial effect" and therefore do not require review by the Commission except as directed by the Executive Director.  (RPP § 2.3.5A.)  However, a federal or state agency may refer otherwise-excluded projects to the Commission if the agency determines that the project may have a substantial effect on the Basin's water resources.  (*Id.* § 2.3.5C.)  A party may request a hearing to review a decision made by the Commission or Executive Director within thirty days of the decision.  (*Id.* § 2.6.1C.)  The Commission will grant a hearing if it determines that an adequate record regarding the decision is unavailable, the case involves a Director determination requiring further action by the Commission, or a hearing is necessary or desirable.  (*Id.* § 2.6.2A)  Hearings are conducted by one or more Commission members, by the Executive Director, or by a Hearing Officer designated by the Chairman.  (*Id.* § 2.6.3A.)  Any determination by the Commission is ultimately subject to judicial review, as long as the appeal is filed within forty-five days of final Commission action.  (*Id.* § 2.6.10.)

### C. The DRBC's Determinations Regarding Natural Gas Development

The present dispute principally concerns the DRBC's actions with respect to natural gas development in the Delaware River Basin.  Natural gas in shale (i.e., sedimentary rock) formations is extracted through a process known as hydraulic fracturing ("hydrofracking"), whereby vertical wells are bored thousands of feet deep and millions of gallons of water mixed

with chemical agents are injected into the well at high pressure to fracture the rock and release the natural gas. (Compl. ¶ 38.) This process also involves horizontal drilling to maximize the shale layer. (*Id.*) According to Plaintiffs' Complaint, hydrofracking—whether for exploration or production—negatively affects water quality, causes toxic pollution, erosion, and various other environmental harms and human health risks. (*Id.* at ¶ 39–44.) The Delaware River has been designated Special Protection Waters ("SPW") and is therefore protected by anti-degradation regulations requiring maintenance of the existing water quality with "no measurable change" except towards natural conditions. (*Id.* at ¶ 23 (citing Water Code § 3.10.3.A.2).)

On May 19, 2009, Executive Director Carol Collier issued a "Determination of the Executive Director Concerning Natural Gas Extraction Activities in Shale Formations within the Drainage Area of Special Protection Waters" ("EDD"), stating that natural gas extraction project sponsors may not hydrofrack shale formations within the SPW drainage area without prior approval from the Commission. (*Id.* at ¶¶ 45–47.) However, the EDD further stated that wells "intended solely for exploratory purposes are not covered by this Determination." (*Id.* at ¶ 49.) On June 14, 2010, Collier issued a Supplemental Determination ("SEDD"),[3] withdrawing the EDD's exclusion of exploratory wells. (*Id.* at ¶ 56.) However, the SEDD carved out an exemption for exploratory well projects that had already received Pennsylvania Department of Environmental Protection ("PADEP") permits and invested in reliance on the May 2009 EDD. (*Id.* at ¶ 59.) Newfield Appalachia PA, LLC ("Newfield") is a sponsor of five of these exempted exploratory well projects. (Br. in Supp. 8.) Collier's rationale for the exemption was that, in addition to the sponsors' investment-backed expectations, these wells were subject to state

---

[3] The superintendent of the Upper Delaware Scenic and Recreational River, an arm of the National Park Service, had sent Collier a letter on May 26, 2010, referring to the Commission all natural gas drilling projects not already subject to review, including "'exploratory' or 'test' wells, and wells completed in geological strata other than shale." (Compl. ¶¶ 52–54.) However, the SEDD did not cite or refer to that letter. (*Id.* at ¶ 61.)

regulation and would "require Commission approval before they can be fractured or otherwise modified for natural gas production." (Compl. ¶ 60.) On July 23, Collier issued an Amendment to the Supplemental Determination ("ASEDD"),[4] extending the grandfathering exemption to two additional wells sponsored by Hess Corporation ("Hess") that would be receiving PADEP permits. (*Id.* at ¶ 69.)

### D. Plaintiffs' Hearing Request and The Commission's Resolution

Various interested parties including the Plaintiffs submitted hearing requests, which the DRBC consolidated and assigned to a Hearing Officer—the Honorable Edward N. Cahn, former Chief Judge of the Eastern District of Pennsylvania and presently Of Counsel at Blank Rome, LLP. (*Id.* at ¶¶ 67–68, 72.) At a September 2 meeting convening the interested parties, Judge Cahn entered a scheduling order governing production of expert reports and exhibits and scheduled the hearing for December 13, 2010.[5] (*Id.* at ¶ 74.) Judge Cahn further instructed the Plaintiffs that their request for a DRBC order to halt construction of the grandfathered exploratory wells would need to be raised before the full Commission. (*Id.* at ¶ 76.) Plaintiffs accordingly submitted to the DRBC a letter request, which the DRBC denied at its September 15, 2010 meeting. (*Id.* at ¶ 78.) The drilling parties subsequently asserted that the completion of the grandfathered wells would render the scheduled hearing moot. (*Id.* at ¶ 83.) On December 8, 2010, the Commissioners adopted a Resolution dismissing Plaintiffs' hearing requests as moot, withdrawing the hearing referral to the Hearing Officer, and terminating the "Exploratory Well Hearing." (*Id.* at ¶ 88.) The Commissioner's Resolution further required Newfield and Hess to file applications with the Commission for approval of the five wells in question within "thirty

---

[4] Regional directors of the Fish and Wildlife Service ("FWS") and the National Park Service ("NPS") had sent a joint letter to Collier on June 25, 2010, objecting to her decision to grandfather in the wells already approved by the PADEP without DRBC review. (Compl. ¶ 63.) However, the ASEDD did not cite or refer to the FWS / NPS joint letter.
[5] The hearing was later rescheduled for January 19, 2011. (Compl. ¶ 80.)

(30) days following the Commission's adoption of natural gas regulations or as directed by the Executive Director or Commission." (*Id.* at ¶ 89.)  Natural gas regulations have not yet been published, and neither the Executive Director nor the Commission has directed Newfield or Hess to file applications. (*Id.* at ¶¶ 91–92.)

### E. The Complaint and Defendants' Motion to Join and/or Dismiss

Plaintiffs timely filed the Complaint [1] within forty-five days of the Resolution, on January 21, 2011.  Plaintiffs claim that Defendants acted arbitrarily and capriciously by failing to require project review after receiving referral letters, grandfathering wells that had received PADEP permits despite the different regulatory standards required of SPW, revoking Plaintiffs' hearing, and denying Plaintiffs' request for an order to halt construction.  (*Id*. at ¶¶ 94–112.)  Plaintiffs seek declaratory judgment that Defendants' actions were arbitrary and capricious; an injunction requiring Defendants to order the grandfathered wells to be plugged, capped, and abandoned; an injunction requiring Defendants' future compliance with the Compact, Water Code, and RPP; and attorneys' fees and costs.  (*Id.* at 27–28.)

On April 4, Defendants filed a motion to join Newfield and Hess as indispensable parties under Federal Rule of Civil Procedure 19, or otherwise dismiss for failure to join under Federal Rule of Civil Procedure 12(b)(7).  (Br. in Supp. 12–24) [8].  Defendants also move to dismiss Defendant Collier under Rule 12(b)(6) on the ground that she is incapable of granting the requested relief and therefore is not a proper party. (*Id.* at 24–25.)  Plaintiffs oppose the motion, arguing that neither Newfield nor Hess is a necessary party, but that, in the alternative, they may feasibly be joined.  (Br. in Opp'n 23–29.)  Plaintiffs further argue that the claims against Collier are to be treated as claims against the Commission.  (*Id.* at 29.)

## III. ANALYSIS

### A. Rule 12(b)(7) Motion to Dismiss for Failure to Join Indispensable Party

Federal Rule of Civil Procedure 12(b)(7) provides that an action may be dismissed due to a plaintiff's failure to join a party under Rule 19. In considering such claims, courts employ a three-part analysis that examines: "(1) whether it is necessary that the absent party be joined; (2) whether it is possible for the absent necessary party to be joined; and (3) if joinder of the absent party is not feasible, whether 'in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable.'" *GenScript Corp. v. AA PEPTIDES, LLC*, No. 09-4889, 2010 WL 2950294, at *2 (D.N.J. July 21, 2010) (quoting *Fiscus v. Combus Fin. AG,* No. 03-1328, 2007 WL 4164388, at *12 (D.N.J. Nov. 20, 2007) and Fed. R. Civ. P. 19).

#### 1. Necessity of Joinder

Rule 19(a) requires joinder of parties "subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction" under one of three circumstances: (1) where the court "cannot afford complete relief among existing parties;" (2) where the absent party "claims an interest relating to the subject of the action" and that party's absence may "as a practical matter impair or impede the person's ability to protect the interest;" or (3) where the absence of the party claiming an interest may "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1).

We note as an initial matter that joinder of Hess and Newfield will not deprive the Court of jurisdiction, given that Plaintiffs' Complaint is based on federal question jurisdiction. *See Princeton Biochem., Inc. v. Beckman Coulter, Inc.*, 223 F.R.D. 326, 330 (D.N.J. 2004) (stating

that party's "joinder will not deprive the Court of jurisdiction, as jurisdiction in this action is premised on 28 U.S.C. § 1331 (federal question), not 28 U.S.C. § 1332"); *see also L.K. ex rel. Henderson v. N.C. State Bd. of Educ.*, No. 08-0085, 2009 WL 3172129, at * 8 (E.D.N.C. Oct. 1, 2009) (stating that joinder would not deprive the court of jurisdiction based on federal question); *Crawley v. Bragg*, No. 07-0054, 2008 WL 743972, at *5 (M.D. Tenn. Mar. 19, 2008) (same). Furthermore, as both Hess and Newfield are incorporated and headquartered in the United States, (*see* Br. in Supp. 18), they are subject to service of process under Federal Rule of Civil Procedure 4(h).

Defendants assert that Newfield and Hess are necessary parties under the second and third circumstances. (Br. in Supp. 14.) We find that the second circumstance is here. To begin with, Hess and Newfield have an interest relating to the subject of this action. The Prayer for Relief in Plaintiffs' Complaint requests "injunctive relief enjoining Defendants to issue an order requiring the exploratory wells grandfathered under the SEDD and ASEDD to be plugged, capped, and properly abandoned in accordance with applicable state and DRBC regulations and all appurtenant facilities and construction to be remediated and the well sites restored to pre-existing conditions." (Compl. 27–28.) Because Hess and Newfield are sponsors of several of the grandfathered exploratory wells, such an order by the Commission would impact Hess and Newfield's interests in their respective wells.

The question, then, is whether the absence of these parties would impair or impede their ability to protect their interests. Plaintiffs maintain that Hess and Newfield's interests are adequately protected by the existing Defendants. (Br. in Opp'n 26.) Specifically, Plaintiffs rely on *Ohio Valley Environmental Coalition v. Bulen*, in which a coalition of environmental groups challenged the Army Corps of Engineers' issuance of a particular type of general permit

allowing discharge of dredged material. 429 F.3d 493, 495 (4th Cir. 2005). There, the Fourth Circuit affirmed the district court's holding that the absent permit holders did not need to be joined as necessary parties because the existing parties to the action included coal associations whose members had operations similarly dependent on the validity of the permit type. *Id.* at 504–05. Here, by contrast, the interests of the Commission and its Executive Director do not so neatly align with those of Hess and Newfield. True, the Commission will likely seek to uphold the actions it took which incidentally favored Hess and Newfield, but it does not have the same interest in vigorously defending these parties' pecuniary interests. Therefore, we find that Hess and Newfield are necessary parties.

### 2. Feasibility of Joinder

Having determined that Hess and Newfield are necessary parties under the second prong of 19(a), we need not discuss the first or third prongs, and we instead proceed to consider whether it is feasible to join Hess and Newfield in this action. Specifically, even though joinder would not defeat subject-matter jurisdiction, we must address whether this Court has personal jurisdiction over Newfield.[6] *See Graco, Inc. v. PM Global, Inc.*, No. 08-1304, 2009 WL 904010, at *8 (D.N.J. Mar. 31, 2009) (stating that joinder is not be feasible if "it would destroy diversity, or the court lacks personal jurisdiction over the absentee"); *Sch. Dist. of City of Pontiac v. Sec. of U.S. Dep't of Educ.*, 584 F.3d 253, 301 (6th Cir. 2009); *Askew v. Sheriff of Cook Cnty., Ill.*, 568 F.3d 632, 634–35 (7th Cir. 2009). We conclude that it does.

New Jersey's long-arm statute allows the exercise of personal jurisdiction to the limits set by the Fourteenth Amendment's Due Process Clause. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). The due process clause requires that nonresident defendants have

---

[6] The parties do not appear to dispute that this Court has personal jurisdiction over Hess, a corporation registered with the State of New Jersey and with regional headquarters in Woodbridge, NJ. (*See* Br. in Supp. 18.)

sufficient "minimum contacts" with the forum state so that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 299 (3d Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Having minimum contacts with a forum provides 'fair warning' to a defendant that he or she may be subject to suit in that state." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). A federal court may have either specific or general personal jurisdiction over a defendant. General personal jurisdiction exists if the defendant has systematic and continuous contacts with the forum state. *Id.* (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)). Where the defendant's contacts do not rise to that level, specific personal jurisdiction may still exist where the defendant has purposefully directed his or her activities at the forum state. *Burger King Corp.*, 471 U.S. at 471; *see also Kehm Oil*, 537 F.3d at 299.

Plaintiff asserts that "Newfield submitted to the exercise of specific jurisdiction in New Jersey" by "actively participating in proceedings before the Commission under the Compact[.]" (Br. in Opp'n 28.) We note here the difficulty of undertaking a traditional "purposeful direction" analysis given that the allegations in Plaintiffs' Complaint primarily concern the actions taken by the Commission and the Executive Director rather than Newfield, which is not named as a defendant. Applying a more flexible approach in light of this unusual posture, we find that Newfield's participation in DRBC meetings and hearings in New Jersey regarding its exploratory wells provided fair warning that the company might have to further defend its interests in a New Jersey federal court. This conclusion is buttressed by the fact that the RPP states that appeals of final Commission actions may be "filed with an appropriate federal court," (RPP § 2.6.10), and

the Compact provides federal district courts with "original jurisdiction of all cases or controversies arising under the Compact[,]" (*see* Compact § 15.1(p)).

Thus, both Hess and Newfield may feasibly be joined under Rule 19, and we need not dismiss this action pursuant to Rule 12(b)(7).

### B. Rule 12(b)(6) Motion to Dismiss Defendant Collier in her Official Capacity

Defendants move to dismiss Collier from this action because she does not have authority to grant the relief requested and is therefore not a proper party to the action. (Br. in Supp. 24.) Specifically, Defendants point out that it is the Commission and not the Executive Director that holds the authority to review and approve project applications. (*Id.* at 25); (*see* Compact § 2.1.4.) Furthermore, the Appeals provision of the Compact provides that parties may appeal "any final Commission action[,]" as opposed to any Executive Director action. (Compact § 2.6.10.) Plaintiffs assert that they named Collier in her official capacity in order to bring suit against the entity on behalf of which she acted—namely, the DRBC. (Br. in Opp'n 29.) However, Plaintiffs' argument begs the question of why they would need to name Collier in her official capacity when they have already named the DRBC as a Defendant. At best, inclusion of Collier in her official capacity would be redundant. Accordingly, we will dismiss Executive Director Carol Collier from this action.

## IV. CONCLUSION

For the reasons stated above, and for good cause shown, Defendants' motion to join is granted, and Defendants' motion to dismiss Defendant Collier from this action is granted. An appropriate order will follow.

                                                                    */s/ Anne E. Thompson*
                                                          ANNE E. THOMPSON, U.S.D.J.

DATE:  August 29, 2011