NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DELAWARE RIVERKEEPER NETWORK, et al.,

        Plaintiffs,

v.

DELAWARE RIVER BASIN COMMISSION, et al.,

        Defendants.

Civ. No. 11-423

OPINION

THOMPSON, U.S.D.J.

      This matter has come before the Court by way of a Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(1) filed by Defendants Hess Corporation ("Hess") and Newfield Appalachia PA, LLC ("Newfield") [docket # 31], and joined by Delaware River Basin Commission (DRBC or "the Commission") (collectively, "Defendants") [33]. Plaintiffs, Delaware Riverkeeper Network, the Delaware Riverkeeper, and Damascus Citizens for Sustainability, Inc. (collectively, "Plaintiffs") jointly oppose this motion [35]. The Court has reached a determination after considering the submissions of the parties and without oral arguments pursuant to Federal Rule of Civil Procedure 78(b). For the following reasons, Defendants' Motion will be granted, and Plaintiffs' Amended Complaint will be dismissed for lack of subject matter jurisdiction.

    I.    BACKGROUND[1]

      This dispute arises out of administrative actions taken by the DRBC regarding certain wells used for natural gas exploration.

---

[1] The background information supplied in this Opinion is taken almost verbatim from the Court's previous Opinion of August 29, 2011, which in turn relied on Plaintiffs' Original Complaint and matters of public record. *See* (Op. of Aug. 29, 2011, at 2–6).

1

The DRBC is a federal-interstate compact agency that was created pursuant to the 1961 Delaware River Basin Compact ("Compact"), *see* Pub. L. 87-328, 75 Stat. 588 (1961); *see also* Compact, *available at* http://www.state.nj.us/drbc/regs/compa.pdf.  The Compact was enacted by concurrent legislation in the United States Congress and in individual states including New York, New Jersey, Pennsylvania, and Delaware, in order to coordinate the management of water resources among private enterprise and federal, state, and local governments.

The DRBC implements the Compact's directives through the Administrative Manual: Rules of Practice and Procedure ("RPP"), *see* 18 C.F.R. §§ 401.81–90; *see also* RPP, *available at* http://www.state.nj.us/drbc/regs/rules.pdf.  Substantively, the Compact prohibits any project having a "substantial effect" on the Delaware River Basin's water resources unless the Commission grants prior approval.  (Compact § 3.8).  Under the RPP, certain classes of projects are deemed not to have a "substantial effect" and therefore do not require review by the Commission except as directed by the Executive Director.  (RPP § 2.3.5A).  However, a federal or state agency may refer otherwise-excluded projects to the Commission if the agency determines that the project may have a substantial effect on the Basin's water resources.  (*Id.* § 2.3.5C).  A party may request a hearing to review a decision made by the Commission or Executive Director within thirty days of the decision.  (*Id.* § 2.6.1C).  The Commission will grant a hearing if it determines that an adequate record regarding the decision is unavailable, the case involves a Director determination requiring further action by the Commission, or a hearing is necessary or desirable.  (*Id.* § 2.6.2A).  Hearings are conducted by one or more Commission members, by the Executive Director, or by a Hearing Officer designated by the Chairman.  (*Id.* § 2.6.3A).  Any determination by the Commission is ultimately subject to judicial review, as long as the appeal is filed within forty-five days of final Commission action.  (*Id.* § 2.6.10).

The present dispute principally concerns the DRBC's actions with respect to natural gas development in the Delaware River Basin.  Natural gas in shale formations is extracted through a

process known as hydraulic fracturing ("hydrofracking"), whereby vertical wells are bored thousands of feet deep and millions of gallons of water mixed with chemical agents are injected into the well at high pressure to fracture the rock and release the natural gas.  This process also involves horizontal drilling to maximize the shale layer.  According to Plaintiffs' Amended Complaint, hydrofracking—whether for exploration or production—negatively affects water quality, causes toxic pollution, erosion, and various other environmental harms and human-health risks.  The Delaware River has been designated Special Protection Waters ("SPW") and is therefore protected by anti-degradation regulations requiring maintenance of the existing water quality with "no measurable change" except towards natural conditions.

On May 19, 2009, Executive Director Carol Collier issued a "Determination of the Executive Director Concerning Natural Gas Extraction Activities in Shale Formations Within the Drainage Area of Special Protection Waters" ("EDD"), stating that natural gas extraction project sponsors may not hydrofrack shale formations within the SPW drainage area without prior approval from the Commission.  However, the EDD further stated that wells "intended solely for exploratory purposes are not covered by this Determination."  On June 14, 2010, Collier issued a Supplemental Determination ("SEDD"), withdrawing the EDD's exclusion of exploratory wells.  The SEDD, however, carved out an exemption for exploratory well projects that had already received Pennsylvania Department of Environmental Protection ("PADEP") permits and that were invested in based upon reliance on the May 2009 EDD.  Newfield is a sponsor of five of these exempted exploratory well projects.  Collier's rationale for the exemption was that, in addition to the sponsors' investment-backed expectations, these wells were subject to state regulation and would "require Commission approval before they can be fractured or otherwise modified for natural gas production."  On July 23, Collier issued an Amendment to the Supplemental Determination

("ASEDD"), extending the grandfathering exemption to two additional wells sponsored by Hess that would be receiving PADEP permits.

Various interested parties, including the Plaintiffs, submitted hearing requests, which the DRBC consolidated and assigned to a Hearing Officer—the Honorable Edward N. Cahn, former Chief Judge of the Eastern District of Pennsylvania and presently Of Counsel at Blank Rome, LLP. At a September 2 meeting convening the interested parties, Judge Cahn entered a scheduling order governing production of expert reports and exhibits and scheduled the hearing for December 13, 2010. Judge Cahn further instructed the Plaintiffs that their request for a DRBC order to halt construction of the grandfathered exploratory wells would need to be raised before the full Commission. Plaintiffs accordingly submitted to the DRBC a letter request, which the DRBC denied at its September 15, 2010 meeting. The drilling parties subsequently completed the drilling process of these grandfathered exploratory wells and thereafter asserted that the completion of these wells rendered the scheduled hearing moot. On December 8, 2010, the Commissioners adopted a Resolution ("the Resolution") dismissing Plaintiffs' hearing requests as moot, withdrawing the hearing referral to the Hearing Officer, and terminating the "Exploratory Well Hearing." The Commissioner's Resolution further required Newfield and Hess to file applications with the Commission for approval of the five wells in question within "thirty (30) days following the Commission's adoption of natural gas regulations or as directed by the Executive Director or Commission." Draft natural gas regulations were issued the next day, but they have yet to be finalized. Neither the Executive Director nor the Commission has directed Newfield or Hess to file applications at this point.

In its pending Motion to Dismiss, Defendants argue that this Court does not have subject matter jurisdiction over the pending suit because Plaintiffs' Amended Complaint is not yet ripe for adjudication. They argue that because the Resolution requires that Hess and Newfield file

4

approval applications with the Commission to see whether they should be granted a permit, and because the Commission has not yet made a determination as to these applications, there has not been a final administrative action.

In opposition, Plaintiffs argue that they are not challenging the Resolution but rather the SEDD and ASEDD. To the extent that Plaintiffs are challenging the Resolution, they contend that they are doing so only as to the Resolution's dismissal of Plaintiffs' hearing requests as moot, the Resolution's withdrawing of the hearing referral, and the Resolution's termination of the Exploratory Well Hearing. More specifically, Plaintiffs argue that Counts One and Two of the Amended Complaint seek to challenge only the Commissioner's decision in the SEDD and ASEDD that the grandfathered wells should be exempt from the pre-approval process. According to Defendants, however, even if Plaintiffs are only challenging the SEDD and ASEDD, these claims are moot because the exploratory wells have already been completed.

In Defendants' view of this case, the Resolution served only to shift the procedural framework for certain well approvals. As Defendants put it: "in the original situation, the five exploratory wells at issue could be drilled . . . without DRBC pre-approval (or any other DRBC approval), but there was going to be a hearing on this approach. Now, the five wells at issue could be (and were) drilled in the Basin without DRBC pre-approval, but Newfield and Hess are required to apply for after-the-fact (i.e., post-construction) approvals." (Defs.' Reply Br. at 5). Therefore, Defendants argue that at this procedural posture Plaintiffs cannot challenge the exclusion of the wells from the pre-approval process because pre-approval is now impossible due to the fact that drilling is complete. Furthermore, Defendants additionally contend that Plaintiffs cannot yet challenge whether the Hess and Newfield should be granted permits retroactively (i.e., post-construction) because the DRBC has not yet made a determination on this issue. The Court

agrees with the Defendants' position, and accordingly the Court will dismiss Plaintiffs' Amended Complaint.

    II.     RIPENESS

This Court has an independent duty to determine its own subject matter jurisdiction when it is "fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)); *see also Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003) (citations omitted). Ripeness, one of several justiciability doctrines, "determines 'whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'" *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs*, 580 F.3d 185, 190 (3d Cir. 2009) (quoting *Peachlum*, 333 F.3d at 433). "A claim is not ripe for adjudication if it rests on some contingent future event." *Porter-Bey v. Bledsoe*, No. 11-1322, 2012 U.S. App. LEXIS 84, at *5 (3d Cir. Jan. 4, 2012) (citing *Texas v. United States*, 523 U.S. 296, 300 (1998)). However, "[r]ipeness is a matter of degree whose threshold is notoriously hard to pinpoint." *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001).

"Where a dispute arises under circumstances that permit administrative review . . . final administrative determination is favored under the ripeness doctrine." *Peachlum*, 333 F.3d at 434. This "prevents the courts, 'through avoidance of premature adjudication, from entangling themselves in abstract disagreements' over administrative problems, and enable[s] the agency to proceed without judicial interruption until an administrative determination has been formalized." *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). Moreover, "[i]n post-enforcement circumstances, there may be little need to hasten administrative resolution because the claim is already in the process of being resolved." *Id.* at 436.

The doctrine of ripeness "is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149. Determining whether a question is fit for judicial review requires the Court to consider "whether the agency action is final; whether the issue presented for decision is one of law which requires no additional factual development; and whether further administrative action is needed to clarify the agency's position . . . ." *Felmeister v. Office of Attorney Ethics*, 856 F.2d 529, 535–36 (3d Cir. 1988) (internal quotation marks omitted) (quoting *Action Alliance of Senior Citizens of Greater Phila. v. Heckler*, 789 F.2d 931, 940 (D.C. Cir. 1986)).

### III.   ANALYSIS

By its own terms, the Resolution at issue in this case is not a final administrative action capable of judicial review. In particular, the Resolution provides in pertinent part:

> Newfield and Hess shall file applications with the Commission for approval of the five natural gas wells spudded to date. Such applications shall be filed on the earlier of thirty (30) days following the Commission's adoption of natural gas regulations or as directed by the Executive Director or Commission. Nothing in this Resolution shall limit the authority of the Executive Director or Commission to take appropriate action to address past or future actions, if any, that may pose a risk to water resourced of the Basin whether through any approvals issued in response to the applications or otherwise.

(Am. Compl. ¶ 92 (quoting the Resolution)). Thus, the Resolution itself pre-supposes that further administrative action will be taken—i.e., approval or disapproval of Newfield and Hess's applications.

An agency action that "itself is a determination only that adjudicatory proceedings will commence" within that administrative body, "is different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action." *FTC v. Std. Oil Co.*, 449 U.S. 232, 241–42 (1980) (citations omitted). At this point it is not clear that the

7

DRBC will grant the applications that Newfield and Hess will be required to submit in the near future.  Even assuming that DRBC improperly excluded the disputed wells from the pre-approval process, the DRBC will be presented with a new opportunity to determine whether these wells should ever have been drilled in the first place by either granting or denying Hess and Newfield's post-construction applications.  In such a situation, "[j]udicial intervention into the agency process denies the agency an opportunity to correct its own mistakes and to apply its expertise." *Id.* at 242 (*Weinberger v. Salfi*, 422 U.S. 749, 765 (1975)).  Thus, intervention here may "lead[] to piecemeal review which at the least is inefficient and[,] upon completion of the agency process[,] might prove to have been unnecessary" as well.  *Id.* (citing *McGee v. United States*, 402 U.S. 479, 484 (1971); *McKart v. United States*, 395 U.S. 185, 195 (1969)).

      Defendants attempt to analogize this situation to cases involving "after-the-fact" discharge permits authorized under the Clean Water Act.  After-the-fact discharge permits authorize discharge of dredge or fill materials into waters retroactively after the discharge has already taken place.  *See* 33 C.F.R. 326.3(e). In one illustrative case, a plaintiff submitted an after-the-fact permit application to the U.S. Army Corps of Engineers, but while this application was pending, the plaintiff also brought suit against the Corps' assertion of jurisdiction over his property.  *See Route 26 Land Dev. Assoc. v. United States*, 753 F. Supp. 532, 534 (D. Del. 1990), *aff'd*, 961 F.2d 1568 (3d Cir. 1992).  The court refused to exercise jurisdiction over the plaintiff's case, however, because it was not yet ripe for adjudication since final agency action had not yet occurred.  *See id.* at 540; *see also Howell v. Army Corps of Eng'rs*, 794 F. Supp. 1072 (D.N.M. 1992).  Although the Court does not believe that these cases are completely analogous, the Court nevertheless finds the reasoning on which they are premised persuasive.

      In order to avoid the fact that the Resolution is not a final administrative action, Plaintiffs contend that they are not directly challenging the Resolution but rather the SEDD and the

8

ASEDD.  This argument, however, is unavailing.  The only relevant legal effect of the SEDD and the ASEDD at issue in this case was that they both excluded from pre-approval review the grandfathered exploratory wells at issue.  In order to have standing to bring a claim, the alleged injury must be capable of being redressed by a favorable decision.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  It would obviously be impossible for this Court to mandate a pre-approval permitting procedure for a well that has already been sited and drilled.  Therefore, to the extent Plaintiffs seek this as a remedy, they do not have standing to assert such a claim.

  Plaintiffs next argue that even if the Court can no longer mandate a review process prior to the start of a now-completed project, the Court could nevertheless grant declaratory relief.  This argument, however, also fails.  "Declaratory judgment is inappropriate solely to adjudicate past conduct."  *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (citing *Gruntal & Co., Inc. v. Steinberg*, 837 F. Supp. 85, 89 (D.N.J. 1993)).  This is because such a decision would amount to a prohibited advisory opinion.  *See id.*

  On the other hand, Plaintiffs also seek to have the exploratory wells fully removed by way of an injunctive order.  But, this claim is not yet ripe.  The harm allegedly caused by the exclusion of the challenged exploratory wells from the pre-approval permitting process is that the wells themselves were actually sited and drilled.  This alleged harm, however, presupposes that these wells would not have been drilled had Hess and Newfield gone through with pre-approval permitting.  But, as explained above, this issue is not yet ripe because the application process—even though it is now occurring post-construction—has not yet been completed.  If the DRBC later determines that it is appropriate to reject Newfield and/or Hess's applications, the particular well would have to, for all practical purposes, be removed.  Thus, this suit may

9

ultimately prove unnecessary and judicial restraint therefore counsels against exercising jurisdiction at this time.

    IV.    CONCLUSION

For all of the reasons discussed above, Defendants' Motion to Dismiss will be granted and Plaintiffs' Amended Complaint will be dismissed. An appropriate Order will follow.

                                        */s/ Anne E. Thompson*  
                                        ANNE E. THOMPSON, U.S.D.J.

Date: August 20, 2012